IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GRAHAM CODY,

        Plaintiff,

    v.

MORRIS S. YOUNG, et al.,

        Defendants.

Case No.  24-cv-05683-MMC

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; AFFORDING PLAINTIFF LEAVE TO AMEND**

Before the Court is the Motion, filed November 27, 2024, "to Dismiss Plaintiff's First Amended Verified Shareholder Derivative Complaint," brought on behalf of defendants Morris S. Young ("Young"), Gary L. Fischer ("Fischer"), David C. Chang ("Chang"), Jesse Chen ("Chen"), Christine Russell ("Russell"), Leonard J. LeBlanc ("LeBlanc") (collectively, "Individual Defendants"), and AXT, Inc. ("AXT").  Plaintiff Graham Cody ("Cody") has filed opposition, to which defendants have replied.  Having read and considered the parties' respective written submissions, the Court rules as follows.[1]

### BACKGROUND

The following factual allegations, contained in the "Verified Amended Shareholder Derivative Complaint" ("AC"), are assumed true for purposes of the instant motion.

AXT, a company headquartered in California, manufacturers "semiconductor wafer substrates" in China through Beijing Tongmei Xtal Technology Co., Ltd. ("Tongmei"), AXT's "China-based subsidiary"  (See AC ¶¶ 1, 10, 24, 25.)  Young, Chang, Chen, and

---

[1] By order filed February 3, 2025, the Court took the matter under submission.

United States District Court
Northern District of California

1  Russell are the members of ATX's current Board of Directors ("Board") (<u>see</u> AC ¶¶ 11,

2  13-15), LeBlanc is a former member of the Board (<u>see</u> AC ¶ 16), and Fischer is ATX's

3  Chief Financial Officer (<u>see</u> AC ¶ 12).

4      In November 2020, AXT "started pursuing an initial public offering ('IPO') and

5  listing of Tongmei on the Shanghai Stock Exchange Science and Technology Innovation

6  Board." (<u>See</u> AC ¶ 2.)  In March 2021, March 2022, March 2023, and March 2024, the

7  Individual Defendants "caused" AXT to file a Form 10-K with the Securities and

8  Exchange Commission.  (<u>See</u> AC ¶¶ 27, 28, 30, 31.)  According to Cody, those four Form

9  10-Ks did not "disclose" the following: "(i) Tongmei had been sued for trade secret

10  violations by a company called Shandong Guojing; (ii) following investigation, authorities

11  had referred the trade secret infringement case for criminal prosecution; (iii) as a result,

12  there was a risk that Tongmei's IPO would fail and AXT would be forced to refund $49

13  million to investors; (iv) as a result of the foregoing, the Company was reasonably likely

14  to suffer significant financial harm."  (<u>See</u> AC ¶ 32.)

15      On April 4, 2024, "J Capital Research published a report entitled 'AXTI[2] may be on

16  the brink of collapse.'"  (<u>See</u> AC ¶ 33.)  As described by Cody, the report stated that

17  "Tongmei's IPO had been blocked [due] to a criminal trade secret infringement case,

18  which would force AXT to return $49 million to investors."  (<u>See</u> AC ¶ 4.)  After release of

19  the report, AXT's stock price fell "approximately 34.9%" (<u>see</u> <u>id.</u>), and, thereafter, a

20  "securities class action" was filed against AXT and "certain of the defendants named [in

21  the instant action]" (<u>see</u> AC ¶ 5).

22      Based on the above, Cody, a shareholder of AXT, asserts against the Individual

23  Defendants a single Count, titled "Breach of Fiduciary Duty,"[3] wherein, he contends, the

24  Individual Defendants, in the above-referenced Form 10-Ks, "knowingly or recklessly

25

26  [2] AXT's "common stock" trades under the symbol "AXTI."  (<u>See</u> AC ¶ 10.)

27  [3] Cody does not assert any claim against AXT, which he refers to as a "nominal

28  defendant."  (<u>See</u> AC ¶ 10.)

made untrue statements" (see AC ¶ 56), and/or or "permitted [AXT's] public filings, disclosures, and statements to misleadingly report [AXT's] overall prospects" (see id.).

## DISCUSSION

Defendants seek dismissal of the AC on two grounds, specifically, lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and failure to state a claim, pursuant to Rule 12(b)(6). The Court considers the two arguments in turn.

**A. Subject Matter Jurisdiction: Existence of Diversity**

Cody alleges that the Court has diversity jurisdiction over the instant action. A district court has diversity jurisdiction if "the matter in controversy exceeds the sum and value of $75,000, exclusive of interest and costs" and each defendant's citizenship is diverse from that of the plaintiff. See 28 U.S.C. § 1332(a).

Here, Cody sufficiently alleges the requisite amount in controversy (see AC ¶¶ 7, 41-43 (alleging harm to AXT includes "[l]oss of market capital and reputational harm," as well as regulatory sanctions)) and sufficiently alleges the parties, as presently aligned, are diverse (see AC ¶ 9 (alleging Cody is citizen of Wisconsin)), (see AC ¶¶ 11-16 (alleging each Individual Defendant is citizen of California, with exception of Chang, who is citizen of New York)), (see AC ¶ 10 (alleging defendant AXT is citizen of Delaware and California)). Defendants argue, however, that AXT should be realigned as a plaintiff, which realignment would destroy diversity, as AXT and all but one of the Individual Defendants are citizens of California.

"Because a derivative lawsuit brought by a shareholder is not his own but the corporation's, the corporation is the real party in interest and usually properly aligned as a plaintiff." In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1234 (9th Cir. 2008) (internal quotation and citation omitted). "There is an exception, however, when a corporation's officers or directors are antagonistic to the interests of the shareholder plaintiff(s)." Id. (internal quotation and citation omitted). In considering, for jurisdictional purposes, whether antagonism exists, a court looks to "the face of the pleadings" and

3

United States District Court
Northern District of California

1    "the nature of the controversy," but does not "try out the issues presented by the charges

2    of wrongdoing," see Smith v. Sperling, 354 U.S. 91, 96 (1957); rather, a court determines

3    whether "the management – for good reasons or for bad – is definitely and distinctly

4    opposed to the institution of the litigation," see Swanson v. Traer, 354 U.S. 114, 116

5    (1957).

6        The Ninth Circuit has explained that where "a majority of the members of the

7    corporation's board [are] named as defendants in the derivative action," such

8    circumstance "weigh[s] heavily" in favor of finding "antagonism" existed at the time the

9    initial complaint was filed.  See Digimarc, 549 F.3d at 1238.  Here, each of the four

10   current members of the Board is a defendant and each, Cody alleges, breached his or

11   her fiduciary duties to AXT.  Consequently, this factor weighs heavily in favor of finding

12   antagonism.

13       In arguing that diversity nonetheless is lacking, defendants rely on Cody's

14   allegation that he "did not make any demand on the Board to institute this action" (see

15   AC ¶ 47), and point out that the Ninth Circuit has observed that "several courts have

16   considered the absence of a demand letter persuasive in finding no antagonism," see

17   Digimarc, 549 F.3d at 1237.  The three cases cited by the Ninth Circuit for such

18   proposition, however, are readily distinguishable; in each, the "persuasiveness" of the

19   lack of a demand was based on the fact that the corporation, at the time the lawsuit was

20   filed, was under the control of individuals not alleged to have had any involvement in the

21   challenged conduct, see Lewis v. Odell, 503 F.2d 445, 446 (2nd Cir. 1974) (realigning

22   corporation as plaintiff, where present management consisted of "trustees appointed by a

23   federal district court," which trustees were uninvolved in alleged misconduct and

24   complaint otherwise failed to allege "any antagonism" by trustees); Tessari v. Herald, 207

25   F. Supp. 432, 436 (N.D. Ind. 1962) (realigning corporation as plaintiff, where defendants

26   accused of wrongdoing were no longer members of board and plaintiff failed to allege

27   new board was "in antagonistic hands"); Nejmanowski v. Nejmanowski, 841 F. Supp.

28   864, 867 (C.D. Ill. 1994) (realigning corporation as plaintiff, where "two out of the three

4

directors of the corporation favor[ed] the lawsuit").

In sum, each member of AXT's Board is a defendant who is alleged to have breached fiduciary duties to AXT and no countervailing factors exist to show antagonism on their part was lacking as of the date the initial complaint was filed.  Under such circumstances, the Court finds AXT is properly aligned as a defendant and, accordingly, the AC is not subject to dismissal for lack of subject matter jurisdiction.

**B.  Failure to State a Claim:  Rule 23.1**

Under Rule 23.1, a plaintiff who brings a shareholder derivative action and has made no "effort" to "obtain the desired action from the directors" must "state with particularity" the "reasons for not obtaining the action or not making the effort."  See Fed. R. Civ. P. 23.1(b)(3).  A failure to comply with Rule 23.1 constitutes a "failure to state a claim under [Rule] 12(b)(6)."  See Sax v. World Wide Press, Inc., 809 F.2d 610, 613 n.1 (9th Cir. 1987).

Here, defendants seek dismissal on the ground that Cody, who, as noted, alleges he did not make a pre-suit demand on the Board, has not pleaded with particularity facts sufficient to excuse the lack of a demand.

"[T]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief."  Rosenbloom v. Pyott, 765 F.3d 1137, 1148 (9th Cir. 2014).  Here, the parties agree, AXT is incorporated in Delaware.  The Delaware Supreme Court has never held that the naming of the majority of the subject company's board of directors suffices to excuse a lack of a demand.  Rather, the Delaware Supreme Court has held that the plaintiff must plead with particularity facts from which a court can determine that, "for at least half of the members of the demand board,"[4] one or more of the following circumstances exist:  (1) "the director received a material personal benefit from the

---

[4] The "demand board" is the board of directors as comprised at the time the complaint is filed.  See United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg, 262 A.3d 1034, 1046 (Del. 2021)

United States District Court
Northern District of California

alleged misconduct that is the subject of the litigation demand;" (2) "the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand;" or (3) "the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand."  See United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg, 262 A.3d 1034, 1059 (Del. 2021) (hereinafter "Zuckerberg"); see also id. at 1059-64 (affirming dismissal for failure to make demand, where plaintiff failed to plead with particularity facts establishing, as to half of demand board, any "prong" of "demand-futility test").

Here, the demand board consisted of Young, Chen, Chang, and Russell (see AC ¶ 47), and Cody contends demand is excused under the second of the above-referenced three prongs of Delaware's "demand futility" test, see Zuckerberg, 262 A.2d at 1059. Specifically, Cody asserts, he has sufficiently alleged that each member of the demand board faces a substantial likelihood of liability for the breach of fiduciary claims asserted in Count One.

As set forth above, Count One is based on the allegation that the six Individual Defendants, including the four members of the demand board, "knowingly or recklessly made untrue statements and/or permitted [AXT's] public filings, disclosures, and statements to misleadingly report [AXT's] overall prospects."  (See AC ¶ 56.)  The Court next considers whether Cody's claim that the members of the demand board "knowingly or recklessly" made false statements and/or his claim that those members "permitted" false statements to be made are pleaded with the requisite factual particularity.

With respect to the first of the two claims in Count One, Cody relies on Malone v. Brincat, 722 A.2d 5 (Del. 1998), which held that directors breach their fiduciary duties to the corporation when they "knowingly disseminate false information that results in corporate injury."  See id. at 9.  Here, Cody alleges, albeit in somewhat general terms, the information he states the demand board intentionally "failed to disclose," in particular,

that AXT's subsidiary Tongmei had been "sued for trade secret violations by a company called Shandong Guojing" and that "authorities," who are not further described in the AC, "referred the trade secret infringement case for criminal prosecution."  (See AC ¶ 32.)[5] As noted, however, the "information" on which a Malone claim is based must be "false," see Malone, 722 A.2d at 9, in this instance, by reason of omitted damaging information. In that regard, Cody relies on his allegation that "J Capital Research," an entity Cody does not further describe, issued a "report" stating that "an article in Chinese" had stated, "[a]ccording to a machine translation," that, "reportedly," Shandong Guojing had "filed suit against Tongmei for allegedly stealing technology" and "the case was transferred in 2023 for criminal prosecution."  (See AC ¶¶ 33-34.)  Cody's reliance on what are, in essence, multiple hearsay statements, is insufficient to allege in any manner, let alone with particularity, that such a lawsuit was, in fact, filed and/or that such case was, in fact, referred for criminal prosecution.

Accordingly, Cody fails to plead with the requisite particularity a Malone claim against any member of the demand board.

With respect to the second of the two claims in Count One, Cody relies on In re Caremark Int'l Inc Derivative Litig., 698 A.2d 959 (Del. 1996), a decision by a Delaware trial court, which decision the Delaware Supreme Court has summarized with approval as follows:

> Caremark articulates the necessary conditions predicate for director oversight liability: (a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.  In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.

See Stone v. Ritter, 911 A.2d 362, 370 (Del. 2006).

---

[5] As set forth above, Cody alleges that, if any such lawsuit and/or criminal investigation existed, there would be "a risk that Tongmei's IPO would fail" and that AXT, in turn, "would be forced" to return to investors the sum of "$49 million" those investors had made.  (See id.)

1    Cody does not, however, allege that the Board "utterly failed to implement any

2  reporting or information system or controls."  See id.  Indeed, Cody affirmatively alleges

3  that the Board did implement reporting and information systems and controls.  In

4  particular, Cody alleges, the Board created an "Audit Committee" comprised of three of

5  the four directors, which Committee is "responsible for the integrity of ATX's disclosures,

6  as well as for overseeing the principal business and operational risks facing [ATX]" (see

7  AC ¶¶ 21, 49),[6] and that those three directors have, in fact "served on the Audit

8  Committee" in "their capacities as Audit Committee members" (see AC ¶ 49).  Nor does

9  Cody allege any facts, let alone with specificity, to support a finding that, in acting in their

10  capacities as Audit Committee members, any of them "consciously failed" to monitor or

11  oversee ATX.  See Stone, 911 A.2d at 370.

12    Accordingly, Cody fails to plead with the requisite particularity a Caremark claim

13  against any member of the demand board.

14    Lastly, Cody, in an attempt to satisfy the third prong of Delaware's demand futility

15  test, alleges that Young, a director who is also ATX's Chief Executive Officer (see AC

16  ¶ 11), "could not disinterestedly consider a demand that might require him to sue the

17  directors that control his continued employment and/or his fellow members of

18  management with whom he works on a day-to-day basis" (see AC ¶ 48).  Even

19  assuming, arguendo, such allegations suffice to "plead[ ] with particularity facts

20

21    [6] For example, the Committee's responsibilities, according to Cody, include
"[r]eview[ing] annually with management its assessment of the adequacy of [ATX's]
22  internal controls and procedures for financial reporting ('Internal Controls')" (see AC
¶ 22.vii), "[r]eviewing quarterly with management its evaluation of [ATX's] procedures and
23  controls ('Disclosure Controls') designed to assure that information required to be
disclosed in its periodic public records is recorded, processed, summarized[,] and
24  reported in such reports within the time periods specified by the Securities and Exchange
Commission for the filing of such reports, and consider[ing] whether any changes are
25  appropriate in light of management's evaluation of effectiveness" (see AC ¶ 22.viii), as
well as "review[ing] with the principal executive and financial officers of [ATX] any report
26  on significant deficiencies in the design or operation of [ATX] which could adversely affect
[ATX's] ability to record, process, summarize[,] or report financial data, any material
27  weaknesses in Internal Controls identified to [ATX's] auditors, and any fraud, whether or
not material, that involves management or other employees who have a significant role in
28  [ATX's] Internal Controls" (see AC ¶ 23.i).

United States District Court
Northern District of California

establishing" that Young "lacked independence" from any of the other Individual

Defendants, see Zuckerberg, 262 A.3d at 1059, those allegations are otherwise

insufficient, for the reason that, as explained above, Cody has not pleaded with the

requisite particularity that a demand would be futile as to at least one other director.  See

Zuckerberg, 262 A.2d at 1059-60 and n.188 (holding, where plaintiff failed to sufficiently

plead demand was futile as to majority of directors, it was unnecessary to consider

whether, under third prong, demand would be futile as to remaining director).

In sum, Cody has failed to comply with Rule 23.1, and, accordingly, the AC is

subject to dismissal for failure to state a claim.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is hereby GRANTED,

and the Amended Complaint is hereby DISMISSED, for failure to state a claim upon

which relief can be granted.  Should Cody wish to file a Second Amended Complaint, for

purposes of complying with Rule 23.1, he shall do so no later than April 11, 2025.

**IT IS SO ORDERED.**

Dated:  March 17, 2025

MAXINE M. CHESNEY
United States District Judge